## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DOMINIC MANSEAU AND ) 
CAROL MANSEAU )        No. 3:16-CV-01231 MPS
        Plaintiffs, )
  )
V. )
  )
ALLSTATE INSURANCE COMPANY )
        Defendant. )        NOVEMBER 28, 2016

## DEFENDANT ALLSTATE INSURANCE COMPANY'S
## REPLY MEMORANDUM IN SUPPORT OF ITS
## <u>MOTION TO DISMISS</u>

Plaintiffs, in their opposition brief, attempt to bypass Allstate's arguments in support of its Motion to Dismiss by characterizing their loss as a "chemical reaction that occurred on [the] property," which they claim is not expressly excluded under the Policy. (ECF No. 21, Pl. Opp. Mem., p. 4-7).    At the same time, Plaintiffs claim that they "have a [v]iable [c]laim for [c]ollapse," (Id., p. 7) without ever addressing the policy language regarding "collapse," in particular the requirement that collapse be "sudden," a term that means "temporally abrupt." *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.,* 259 Conn. 527, 536, 791 A. 2d 489 (2002). Plaintiffs' claimed "chemical reaction" is simply another way of describing the process of deterioration—the oxidation of pyrrhotite, a mineral within the concrete aggregate that is causing the concrete to crack.    This cracking is not a "sudden and accidental" loss, but, as Plaintiffs allege in their complaint, is part of the "progressiv[e] deteriorat[ion of] the basement walls." (ECF No. 1, ¶ 7, p. 8).    This claimed damage is not a covered "collapse" within the Policy's grant of coverage.  (ECF No. 19-1, Def. Mem., pp. 9-15).

As discussed in Allstate's main brief, Plaintiffs' claim for the cracking damage to their foundation walls caused by deteriorating concrete is not covered because it is not a "sudden and accidental direct physical loss to property" within the coverage of Allstate's Policy.  (ECF No. 19-4, Def. Mem., Exh. C, p. 19).  Similarly, as discussed in Allstate's main brief, the alleged damage does not constitute a "collapse" within the Policy's grant of coverage, which only covers an "entire collapse" of a structure or a portion thereof that was "sudden and accidental."  (ECF No. 19-1, Def. Mem., pp. 9-14; ECF No. 19-4, Def. Mem., Exh. C, pp., 28; ECF No. 1, ¶¶ 5-8). In addition, Plaintiffs' claim falls within the scope of exclusions for losses **consisting of or caused by** (1) settling, cracking, shrinking, or bulging and (2) defective materials used in construction.  (ECF No. 19-1, Def. Mem., pp. 6-9; ECF No. 19-4, Def. Mem., Exh. C, pp. 20-21).  Moreover, even if the claimed "chemical" component of the deteriorative process were incorrectly considered in isolation, the loss would not be covered under the Policy due to exclusions for losses consisting of or caused by rusting, corrosion and contamination.  (ECF No. 19-4, Def. Mem., Exh. C, pp., 20; ECF No. 19-5, Def. Mem., Exh. D, pp. 3).

I.   **ARGUMENT**

   **A. Plaintiffs' "Chemical Reaction" Argument is Unavailing, as Their Claimed Loss is Not Within the Scope of Policy Coverage.**

Plaintiffs, in their opposition, claim that their losses are due to "chemical reaction," and are therefore not excluded under the Allstate Policy.  (ECF No. 21, Pl. Mem., pp. 4-7).  This argument  attempts to isolate a single element in the deteriorative process that is causing their cracking loss.  It is akin to someone arguing that her burned house was damaged by the "chemical reaction" of fuel, combustion and oxygen rather than fire, or that wood was not damaged by rot but by the "chemical reaction" of enzymes from bacteria and fungi.  If untreated

2

steel is left exposed to the elements, it will undergo a "chemical reaction" through oxidation, more commonly known as rust.  That does not mean a rusted bolt is a "chemical reaction" loss.

### i. The "Chemical Reaction" was not a Sudden and Accidental Direct Physical Loss to Property and is Not Covered Under the Policy.

Even if the "chemical reaction" causing the concrete cracking were treated, erroneously, as a separate cause from the deterioration of defective concrete used during the construction of the foundation, the loss would still not fall under the Policy's grant of coverage, which is limited to "**sudden** and accidental direct physical loss" to covered property.  (ECF No. 19-4, Def. Mem., Exh. C, p. 19) (emphasis added).  As Allstate noted in its main brief, the Connecticut Supreme Court has held that the term "sudden," in the context of an insurance policy, means "temporally abrupt," and that "a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process" cannot be considered to be "sudden."  *Buell,* supra, 259 Conn. at 544; Def. Mem., ECF No. 19-1, p. 10-11.  By Plaintiffs' admission, damage was caused by a "chemical reaction" and was the result of "progressive deterioration"—a position supported by engineers retained by both parties.  (ECF No. 1, Compl., ¶ 7; ECF No. 22-1, Pl. Mem., Exh. A, p.1; ECF No. 19-5, Def. Mem., Exh. D, pp. 2-3).  There is nothing "sudden" or abrupt about a process of deterioration that has occurred slowly and incrementally since the first pouring of the concrete.  Plaintiffs' loss is not within the Policy's grant of coverage.

### ii. Plaintiffs' Alleged Loss is Cracking in Concrete Caused by Defective Materials, Which is Not Covered Under the Policy.

Plaintiffs state in the Complaint that their loss consists of "visible cracking patterns in the basement walls of their home" caused by "defective materials."  (ECF No. 1, Compl., ¶ 5).  The Policy excludes losses either "consisting of" or "caused by" cracking of walls and defective

3

materials. (ECF No. 19-1, Def. Mem., pp. 6-9; ECF No. 19-4, Def. Mem., Exh. C, pp. 20-21). Nevertheless, Plaintiffs now state in their opposition that they "are seeking coverage for a chemical reaction that occurred on their property, while the cracking is just a further manifestation of a 'sudden and accidental physical loss' that has already occurred," and assert that they "are not specifically claiming a construction defect per se." (ECF No. 21, Pl. Mem., pp. 4-7). This convoluted argument is not supported by the facts alleged in the Complaint—the loss consists of cracking and/or is caused by cracking, but either way it is not covered. Further, whether Plaintiffs choose to characterize their loss as a "construction defect" is immaterial— their Complaint cites "defective materials" as a cause of loss. (ECF No. 1, Compl., ¶ 10). Again, these are excluded causes of loss under the plain language of the Policy.

As Allstate stated in its letter informing Plaintiffs of the denial of their claim, analysis of core samples from Plaintiffs' Property revealed "the presence of pyrrhotite, a reactive iron-sulfide material that expands when it reacts with water and air." (ECF No. 19-5, Def. Mem., Exh. D, p. 2). Allstate further noted that "**[t]he pyrrhotite has been present since the concrete was originally poured**." (Id., p. 3) (emphasis added). Neither Plaintiffs nor their engineer[1] disputes that the concrete cracking resulted from the composition of the original concrete mix. (ECF No. 1, Compl., ¶ 7; ECF No. 21, Pl. Mem., p. 5; ECF No. 21-1, Pl. Mem., Exh. A, p. 1). The Policy excludes coverage for "loss consisting of or caused by . . . faulty, inadequate, or defective . . . materials used in . . . construction . . . of property." (ECF No. 19-1, Def. Mem., pp.

---

[1] As Allstate has previously noted, a court, in adjudicating a motion to dismiss, is permitted to consider "any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). Plaintiffs have made reference to Allstate's denial of their claim and the contents of that denial letter as an integral part of their breach of contract claim, therefore the Court is permitted to consider it for purposes of this Motion to Dismiss. (ECF No. 1, Compl. ¶¶ 11-12, 15, 21-22). Leonard Morse-Fortier's engineering report was incorporated in Allstate's denial letter and attached to the letter itself; therefore the Court is permitted to consider it for purposes of the Motion to Dismiss. (ECF No. 19-5, Def. Mem., Exh. D, pp. 2-5).

6-9; ECF No. 19-4, Def. Mem., Exh. C, pp. 20-21).   Accordingly, it is undisputed that the "chemical reaction" at issue consisted of or was caused by defective or inadequate materials used in the construction of the foundation, and therefore the loss is not covered under the Policy. (ECF No. 19-1, Def. Mem., pp. 6-9).

Plaintiffs similarly claim that "[w]hether the walls crack, bow, fall down, or mysteriously disappear into thin air, th[is] does not mean a physical loss did not occur due to a chemical reaction that happened within."   (ECF No. 21, Pl. Mem., p. 6-7).   This statement begs the question.  Chemical reactions are an everyday part of the natural world.  They are not, in and of themselves, a loss.  The loss here is obvious and undisputed—cracked foundation walls.  The Policy prefaces all of the excluded losses under the policy with the statement that Allstate does not cover loss "consisting of or caused by" the enumerated perils.  (ECF No. 19-4, Def. Mem., Exh. C, p. 19-21).  This includes the provision that the Policy does "not cover loss consisting of or caused by . . . cracking [or] bulging . . . of foundations [or] walls . . . ."  (ECF No. 19-4, Def. Mem., Exh. C, p. 20).   A loss *consisting of* cracking or bowing to a foundation wall, like Plaintiffs' loss here, is clearly excluded under the Policy.  (Id., pp. 19-20).

### iii.   Loss Caused by Chemicals, Rust, or Other Corrosion is Not Covered Under the Policy.

As Allstate expressly stated in its denial letter, the "chemical reaction" that it identified in the concrete—namely the expansion of reactive pyrrhotite in the concrete—is excluded under the Policy.  The Policy provides, in *Losses We Do Not Cover Under Coverages A and B*:

> *We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B — Other Structures Protection consisting of or caused by:*
>
> *15.*                              * * *
>
>     *d)*      **rust or other corrosion**, *mold, wet or dry rot;*

> e)   *contamination, including, but not limited to the presence of toxic,*
> *noxious or hazardous gasses, __chemicals__, liquids, solids or other*
> *substances at the residence premises or in the air, land or water*
> *serving the residence premises;*

* * *

(ECF No. 19-4, Pl. Mem., Exh. C, pp. 20) (emphasis added).

Plaintiffs are seeking coverage for cracking in their concrete that they claim was "caused by a chemical reaction in the concrete." (ECF No. 1, Compl., ¶¶ 6-7). Allstate's denial of the claim, based on engineering review and sampling of concrete from Plaintiffs' foundation, is that the loss is caused by the presence of the reactive mineral pyrrhotite, and noted that "[w]hen exposed to water and air, including ground water, the pyrrhotite expands, causing the concrete to develop cracks that gradually grow larger and more extensive." (ECF No. 19-5, Def. Mem., Exh. D, p.2-3). The engineering report attached to the denial letter further explains that when the reactive pyrrhotite is exposed to water and air it "oxidizes and expands," which causes the cracking. (ECF No. 19-5, Def. Mem. Exh. D, p. 10). Thus the "chemical reaction" in the concrete identified by Allstate—the oxidation of pyrrhotite—falls within the exclusion for losses caused by or consisting of "rust or other corrosion." (ECF No. 19-4, Def. Mem., Exh. C, p. 20; ECF No. 19-5, Def. Mem. Exh. D, p. 10).

**B.  The Additional Coverage for "Collapse" Does Not Apply to Plaintiffs' Claim.**

Plaintiffs, despite their failure to address the Policy language at issue or the case law cited by Allstate in their opposition brief, nevertheless assert that they "have a [v]iable [c]laim for [c]ollapse." (ECF No. 21, Pl. Mem., pp. 7-9). The Allstate Policy only covers an "entire collapse" of a building or part of a building that is "sudden and accidental." (ECF No. 19-4, Def. Mem., Exh. C, p. 28). Plaintiffs' themselves categorize their loss as the "progressive

deterioration" of their basement walls, which, under *Buell,* 259 Conn. at 544, is not a "sudden" loss.[2]   Nor does Plaintiffs' claim that they were only "fully appri[s]ed of the seriousness of the condition to their home" in 2015 (ECF No. 21, Pl. Mem., p. 8) help their collapse claim.   As *Buell* makes clear, "sudden," as used in the phrase "sudden and accidental" in an insurance policy, does not mean "unexpected" but rather "temporally abrupt." *Buell*, 259 Conn. at 536, 544.

*Malbco Holdings, LLC v. Amco Ins. Co*., 629 F. Supp. 2d 1185 (D. Or. 2009), cited by Plaintiffs at page 8 of their brief, is readily distinguishable, and, in fact, only serves to strengthen Allstate's argument that "sudden" is an explicit requirement for collapse under the terms of the Policy.   In *Malbco*, the policy defined collapse, in relevant part, as "an **abrupt** falling down or caving in of a building," and the court recognized that "abrupt has a plain meaning, namely **sudden**." *Id*. at 1193-95 (emphasis added; internal quotation marks omitted).   Accordingly, the court reasoned that the first issue in determining whether a collapse occurred under the policy was "whether an **abrupt event** caused part of the [building] to fall or cave in, such that part of it could not be occupied for its intended purpose." *Id*. at 1197   (emphasis added).   The experts in that case differed as to whether the event in question, the snapping of floor trusses that caused a hotel floor to fall three inches, occurred suddenly and abruptly.   *Id.* at 1198. Here, by Plaintiffs' own admission, the "event" in question is the "ongoing" damage to their foundation caused by "progressive[e] deteriorat[ion of] the basement walls."   (ECF No. 1, Compl., ¶ 5, 7,10;   ECF No. 21, Pl. Mem., p. 8).   Plaintiffs do not allege a "sudden" or "abrupt" event.[3]

---

[2] Plaintiffs' citation to *Parker v. Worcester Insurance Co.*, 247 F.3d 1, 5 (1st Circ. 2001) (ECF No. 21, Pl. Mem., p. 8-9) is inapposite, as *Parker* dealt with the issue of when a loss takes place for purpose of applying a policy's suit limitations clause, which is not at issue in this motion.

[3] Plaintiffs also confusingly assert that "[t]he term 'caving in' . . . connotes that there is coverage under the Defendant's policy" and cite to *Gulino v. Economy Fire and Casualty Company*, 971 N.E.2d 522, 527-28 (Ill. App.

Plaintiffs' reliance on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009), is similarly unavailing. The policy in *Dalton*, unlike the Allstate Policy here, did not require that collapse be "entire" or "sudden and accidental," and it was due to the absence of this very language that the court, interpreting New York law, held that, where a policy *did not* specify an "entire" or "sudden" requirement or otherwise define "collapse," a collapse caused by hidden decay or insect damage did not, as a matter of law, require a "sudden destructive force." *Id.* at 93. In so holding, the Second Circuit further noted in a footnote that a case involving a policy that *was* construed to require a "sudden impact" *would be distinguishable*. *Id.* at 92 n1. Accordingly, *Dalton* is inapplicable in a case, such as this one, where the requirements of "entire collapse" and "suddenness" are written into the policy's coverage.[4]

### C. Because Count One Should be Dismissed, Counts Two (Breach of the Implied Covenant of Good Faith and Fair Dealing) and Three (Violation of CUTPA and CUIPA) Should Be Dismissed As Well.

Plaintiffs do not dispute that if there is no coverage under the Policy, there can be no liability for bad faith or a CUTPA/CUIPA violation. (*See* cases cited at Def. Mem., ECF No. 19-1, pp. 15-16). Therefore, only if the Court does not grant Allstate's motion to dismiss Count One of the Complaint is it necessary to consider the allegations of Counts Two and Three.

As to bad faith, Plaintiffs attempt to distinguish *Kim v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 147823, *9, (D. Conn. Oct. 30, 2015), in which the court adopted the well-

---

Ct. 2012) in support. (ECF No. 21, Pl. Mem., p. 8). The term "caving in," however, does not appear in the Allstate Policy. (ECF No. 19-4, Def. Mem., Exh. C).

[4]Plaintiffs, in passing, also suggest that "the structural integrity of the building certainly is in a state of collapse" and cite to a Maryland District Court decision, *130 Slade Condo Association, Inc. v. Millers Capital Insurance Co.*, 2008 U.S. Dist. LEXIS 44182 (D. Md. June 2, 2008) in support. In that case, however, the policy at issue provided that collapse must consist of "an **abrupt** falling down or caving in of a building or any part of a building" in order for the additional coverage for collapse to apply, which the court interpreted as requiring "an **actual, abrupt, and major event** that renders the building structure unusable." *Id.*, at *4, 12. Applying this definition, the court concluded that the building had "caved in" and "suffer[ed] a serious impairment to its structural integrity" because it "buckle[d] three inches down and three inches to the south **during an abrupt event**, which render[ed] the building unsafe and subject to evacuation." *Id.*, at 13. Here, Plaintiffs' alleged damage consists of the gradual deterioration to the foundation wall, and *not* a sudden or abrupt event. (ECF No. 19-1, Def. Mem., pp. 9-15; ECF No. 19-4, Def. Mem., Exh. C).

recognized principle that an insurer's good faith denial of coverage does not constitute bad faith. *Id.*, at \*12. Plaintiffs rely on *Gabriel v. Liberty Mutual Fire Ins. Co.*, No. 3:14-CV-01436, 2015 U.S. Dist. LEXIS 129952 (D. Conn. Sept. 28, 2015) to support their position that some kind of bad faith "plausible inference" can be drawn from their Complaint. (ECF No. 21, Pl. Mem., pp. 9-10). Unlike the plaintiffs in *Gabriel*, however, the Plaintiffs here have not alleged that Allstate "ignored state and federal case law" when interpreting policy terms, or that Allstate "intentionally cited inapplicable policy language to mislead the [Plaintiff] into thinking that [his] claim was not covered in order to preserve [Allstate's] assets." *Gabriel*, supra, 2015 U.S. Dist. LEXIS 129952 at \*13. Instead, Plaintiffs' only "bad faith" allegation is that Allstate, "in its discretion, unreasonably and in bad faith, sought out other policy provisions and interpreted these and other policy provisions in a manner for the purpose of denying benefits despite the aforementioned provision of the policy conferring benefits." (ECF No. 1, Compl., ¶ 15). Very recently, in *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-00510 (JCH), 2016 U.S. Dist. LEXIS 147165 (D. Conn. Oct. 25, 2016), Judge Hall dismissed an almost identical claim of bad faith in another concrete deterioration case. The court noted that "the plaintiffs allege that [the insurer] sought out policy provisions that allowed it to deny benefits and interpreted those provisions unreasonably and in bad faith. Nothing in the Complaint provides the court with allegations that plausibly support an inference that CSAA acted in bad faith or with a sinister motive." *Id.* at \*6-7.

As noted in Allstate's main brief at page 17, an insured cannot recover for bad faith if the insurer denies a claim that is "fairly debatable," and the insurer has some arguably justifiable reason for denying the claim. *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169,

177 (D. Conn. 2005).  At a minimum, the coverage issues at issue here are "fairly debatable," precluding liability for bad faith.  Count Two should be dismissed.

As to Plaintiffs' CUTPA/CUIPA claim, Plaintiffs assert that their "claim concerning [Allstate's] association with ISO have been the subject of other Complaints where similar Motions to Dismiss have been denied" and cites to *Panciera v. Kemper Independence Ins. Co.*, No. 3:13-CV-1009, 2014 U.S. Dist. LEXIS 59076 (D. Conn. April 29, 2014) and *Gabriel*, supra, 2015 U.S. Dist. LEXIS 129952.  These cases do not involve consideration, as here, of the insurer's specific reasons for denial of the claim at issue.  As with bad faith, there can be no liability under Conn. Gen Stat. § 38a-816(6) where the insurer's coverage position was, as here, reasonable and fairly debatable.  *See, e.g., Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, 2009 Conn. Super. LEXIS 3508, *23 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.,* 2004 Conn. Super. LEXIS 564, *43 (Conn. Super. Ct. Mar. 3, 2004) (same result).  Accordingly, even if the Court does not grant Allstate's motion to dismiss as to Count One, it should dismiss Count Three, as Plaintiffs have failed to state a cognizable CUTPA/CUIPA claim.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and Counts One, Two, and Three should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

            /s/  Raymond T. DeMeo
            Raymond T. DeMeo (ct02189)
            Jessica A. R. Hamilton (ct29702)
            ROBINSON & COLE, LLP

280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8200
Fax:  (860) 275-8299
rdemeo@rc.com
jhamilton@rc.com
Attorneys for Allstate Insurance Company

## CERTIFICATION

I hereby certify that on November 28, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.


*/s/ Raymond T. DeMeo*
Raymond T. DeMeo