# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOMINIC MANSEAU and CAROL MANSEAU<br>　　　Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY<br>　　　Defendant. | No. 3:16-cv-1231 (MPS) |

## RULING ON MOTION TO DISMISS

Plaintiffs Dominic Manseau and Carol Manseau (collectively, "Plaintiffs") filed this action in state court against their homeowner's insurance provider, Allstate Insurance Company ("Allstate"), for failure to pay for damages to the basement walls of their home caused by cracking concrete. (ECF No. 1.) Allstate removed the case to this court on July 22, 2016. (ECF No. 1.) Plaintiffs bring claims of breach of contract (Count One), breach of the implied covenant of good faith and fair dealing (Count Two), and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a–816 *et seq.* ("CUIPA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.* ("CUTPA") (Count Three). On October 24, 2016, Allstate moved to dismiss the breach of contract claim on the grounds that the insurance policy at issue did not cover the alleged damage, and the remaining claims because they cannot be maintained in the absence of a breach of contract claim, or, in the alternative, for failure to state claims on which relief can be granted. (ECF No. 19.) For the reasons set forth below, the motion to dismiss is GRANTED.

1

## I. Factual Allegations

According to the allegations in the complaint, Allstate has insured Plaintiffs' home in Ellington, Connecticut at all relevant times. (ECF No. 1 ¶ 3.) Plaintiffs have made all required insurance payments. (*Id.* ¶ 4.)

"Recently," Plaintiffs "observed visible cracking patterns in the basement walls of their home." (*Id.* ¶ 5.) On or about January 5, 2016, a structural engineer inspected their home, and concluded that "the concrete deterioration and cracking were caused by a chemical reaction in the concrete, and that this chemical reaction would continue to progressively deteriorate the basement walls, rendering the structure unstable . . . ." (*Id.* ¶¶ 6-7.) The engineer recommended that the basement walls be replaced. (*Id.* ¶ 7.)

On or about January 15, 2016, Plaintiffs made a claim for coverage under their homeowner's insurance policy, including the engineer's report with their claim. (*Id.* ¶ 8.) Allstate denied their claim on June 7, 2016. (*Id.* ¶ 11.) In its denial letter Allstate stated:

> Allstate's investigation has determined that the cracking of foundation walls at your property is a condition caused by the expansion of reactive pyrrhotite in the concrete. The pyrrhotite has been present since the concrete was originally poured. When exposed to water and air, including ground water, the pyrrhotite expands, causing the concrete to develop cracks that gradually grow larger and more extensive. Our investigation has determined that one or more of the above-referenced Policy exclusions are applicable to your loss.

(ECF No. 22 at 3.)

Plaintiffs' Homeowner's Policy ("Policy") has three "Sections." (ECF No. 19-4 at 14.)[1] "Section I – Your Property," which addresses property coverage, contains the following

---

[1] Although the denial letter and the Policy were not attached to the complaint or formally incorporated by reference, as discussed below, "the court may nevertheless consider [a document] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and quotation marks omitted). The Policy attached to Allstate's motion to dismiss was effective from

2

subsections: "Coverage A Dwelling Protection," "Coverage B Other Structures Protection," "Coverage C Personal Property Protection," "Additional Protection," and "Section I— Conditions." (*Id.*)

Under "Section I – Your Property," the Policy states:

> *Losses We Cover Under Coverages A and B:* We will cover sudden and accidental direct physical loss to property as described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

(*Id.* at 19.) The Policy continues:

> *Losses We Do Not Cover Under Coverages A and B:* We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by:
> . . . .
> 12. Collapse, except as specifically provided in Section I—Additional Protection, under item 11, "Collapse."
> . . .
> In addition, we do not cover loss consisting of or caused by any of the following:
> 15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
> . . .
> d) rust or other corrosion, mold, wet or dry rot;
> . . .
> g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
> . . . .
> 22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
> . . .
> c) materials used on repair, construction, renovation or remodeling . . . .

(*Id.* at 20-21.) Allstate quoted the provisions under "Losses We Do Not Cover Under Coverages A and B" in its denial letter. (ECF No. 22 at 3.)

---

April 15, 2015 through April 15, 2016. (ECF No. 19-4 at 6.) Plaintiffs do not allege that a different policy applies, or that the denial letter provided by Allstate is incorrect in its reliance on this particular policy.

3

The "Additional Protection" portion of Section I states:

11. Collapse
We will cover:
(a) the entire collapse of a covered building structure;
(b) the entire collapse of part of a covered building structure; and
(c) direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, the collapse of a building structure specified in (a) or (b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
. . .
(b) hidden decay of the building structure;
(c) hidden damage to the building structure caused by insects or vermin;
. . .
(f) defective methods or materials used in construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

(ECF No. 19-4 at 28.)

Plaintiffs also allege that Allstate participates in the Insurance Services Office, Inc. ("ISO"), an organization "that collects data regarding claims shared by most, if not all, insurance companies." (ECF No. 1 ¶ 18.) Plaintiffs allege that, through participation in ISO, Allstate had knowledge of many claims and lawsuits within a 30-mile radius of Stafford Springs, Connecticut resulting from similar concrete decay. (*Id.* ¶ 20.)

Plaintiffs allege that Allstate acted "unreasonably and in bad faith" by seeking out "other policy provisions" to deny coverage and interpreting "policy provisions in a manner for the purpose of denying benefits." (*Id.* ¶ 15.) Plaintiffs allege that Allstate's denial letter was "false and misleading," and "contrary to other sections of its policy that provide coverage, such as collapse, and . . . nowhere in the policy does it exclude coverage for chemical reaction losses." (ECF No. 1 ¶ 22.) According to Plaintiffs, Allstate has regularly denied similar claims on similar grounds, which "can be found in numerous court cases." (*Id.* ¶ 23.) Plaintiffs cite in their opposition papers

Allstate's involvement in *Adams v. Allstate Insurance Co.*, No. 3:16-cv-1360 (JBA), *Pearse v. Allstate Insurance Co.*, No. 3:16-cv-1337 (SRU), *Lajeunesse v. Allstate Insurance Co.*, No. 3:16-cv-937 (AVC), and a class action, *Halloran, et al. v. Harleysville Preferred Insurance Co.*, No. 3:16-cv-133 (VAB). (ECF No. 21 at 12-13.)

II. **Legal Standard**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding a Rule 12(b)(6) motion, I may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted).

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Connecticut Medical Ins. Co. v. Kulikowski,* 286 Conn. 1, 5 (2008) (citation and quotation marks omitted).

> If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and

> ordinary meaning . . . . When interpreting an insurance policy, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result…. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Id.* at 5-6 (citations, quotation marks, and alterations omitted).

### III. Discussion

#### A. Breach of Contract

Plaintiffs argue that the Policy provides coverage for their alleged damages under either the collapse provision of the Policy, or because the loss alleged is due to a chemical reaction, which they argue is not excluded by the Policy. Both of these arguments are unpersuasive.

##### 1. Applicable Policy

Allstate claims that the damage to Plaintiffs home was excluded from coverage by the plain language of the Policy in effect at the time of the claimed loss. (ECF No. 19-1 at 1-2.) Plaintiffs allege that "[o]n or about January 15, 2016, the Plaintiffs made a timely formal claim for coverage under their homeowner's insurance policy with the Defendant." (ECF No. 1 ¶ 8.) As noted, Plaintiffs do not allege that a policy other than the Policy attached to Allstate's motion to dismiss, effective from April 15, 2015 through April 15, 2016, applies to their claims, or that Allstate incorrectly relied on the Policy, rather than another policy or another version of the Policy, in its denial letter. Rather, Plaintiffs refer to provisions of the Policy throughout the complaint. (*See* ECF No. 1 ¶¶ 10, 21-22.) As a result, although Plaintiffs did not attach the Policy to their complaint, I must decide whether they have stated plausible claims under the Policy.

##### 2. "Collapse" Coverage

First, Plaintiffs claim that their alleged loss is covered under the collapse provision located under "Section I, 'Additional Protection'" of the Policy.[2] (ECF No. 1 ¶ 10.) The section on "Collapse" under "Additional Coverages" specifies that, "[f]or coverage to apply, the collapse of a building structure . . . must be a sudden and accidental direct physical loss." (ECF No. 19-4 at 28.) In the context of an insurance policy involving "sudden and accidental" pollution, the Connecticut Supreme Court held that "sudden" "included a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536 (2002). The Court, reviewing dictionary definitions, "acknowledge[d] that, the word sudden can be used to describe the *unexpected nature*, as well as *abrupt onset*, of the event being described." *Id.* at 540 (emphasis added). But it concluded that in the context of the phrase "sudden and accidental," because "accidental" already included an element of unexpectedness, "sudden" had to be accorded a temporal element to avoid rendering it mere surplussage. *Id.* at 540-41.

Following the logic of *Buell*, courts have ruled in favor of insurance companies in concrete decay cases where insurance policies require "sudden and accidental" losses, or otherwise contain language requiring that the loss be temporally abrupt. *See, e.g Metsack v. Liberty Mut. Fire Ins. Co.*, 2017 WL 706599, at *7 (D. Conn. Feb. 21, 2017) (granting motion for summary judgment where policy required "a sudden and accidental direct physical loss"); *Alexander v. General Ins. Co. of America*, No. 3:16-cv-59, transcript of oral ruling, ECF No. 22 at 23 (D. Conn. July 7, 2016) (granting motion to dismiss where policy at issue defined collapse as an "abrupt falling down or caving in"); *Jemiola v. Hartford Cas. Ins. Co.*, No. CV-15-6008837-S, 2017 WL 1258778, at *1

---

[2] The complaint cites "Section I, 'Additional Protection', Paragraph 12," (ECF No. 1 ¶ 10) but this appears to be a typo, as Paragraph 12 covers "Land," while Paragraph 11 covers "Collapse." (ECF No. 19-4 at 28.)

(Conn. Super. Ct. Mar. 2, 2017) (unpublished) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in"); *Toomey v. Central Mut. Ins. Co.*, Docket No. CV-15-6009841-S (Conn. Super. Ct. Jud. Dist. of Tolland Aug. 3, 2017) (unpublished) (granting summary judgment where policy defined collapse as "an abrupt falling down or caving in").

Here, I find that the term "sudden," used in the context of the phrase "sudden and accidental" is unambiguous, and must be accorded a temporal quality. Thus, Plaintiffs must have plausibly alleged that the loss for which they sought coverage occurred abruptly, and not merely unexpectedly, for coverage to have applied. Even construing the allegations in the light most favorable to Plaintiffs, Plaintiffs have not alleged that any damage to their home occurred suddenly or otherwise temporally abruptly. Rather, Plaintiffs alleged that a chemical reaction was causing "concrete deterioration and cracking," (ECF No. 1 ¶ 7) which "would continue to progressively deteriorate the basement walls, rendering them unstable." (*Id.*) Elsewhere in the complaint, Plaintiffs again characterize the damage as the "progressive deterioration of the concrete caused by the chemical reaction." (*Id.* ¶ 10.) Plaintiffs' allegations that the damage has occurred progressively and continuously are at odds with any claim that the damage occurred abruptly.

Further, the Policy specifies that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF No. 19-4 at 28.) In addition to alleging that their basement walls are progressively deteriorating (which falls outside the definition of "collapse" for the reasons discussed above), Plaintiffs allege that their home displayed "visible cracking patterns." (ECF No. 1 ¶¶ 5, 6.) The cracking Plaintiffs allege to have occurred falls squarely within the Policy language in the definition of "collapse" excluding coverage for "settling, cracking, shrinking, bulging or expansion." (ECF No. 19-4 at 28.) As a result, Plaintiffs' claim that the loss alleged is covered as a "collapse" is implausible.

Second, Plaintiffs argue that the loss allegedly sustained should be covered as a loss due to a "chemical reaction," which, they contend, is not expressly excluded by the Policy. (ECF No. 21 at 1; ECF No. 1 ¶ 9.) Plaintiffs argue that they have alleged that "the chemical reaction is the 'sudden and accidental direct physical loss'" necessary to trigger collapse coverage. (ECF No. 21 at 4.) But Plaintiffs also argue that "the 'collapse' is a further result of the chemical reaction." (ECF No. 21 at 6.) Plaintiffs cannot plausibly allege that the loss itself was both a collapse due to a chemical reaction on the one hand and the originating chemical reaction on the other. Rather, Plaintiffs' allegations make plain that the loss Plaintiffs sought coverage for was the visible cracking and progressive deterioration occurring in their home.

Even construing the complaint to allege that the loss was a chemical reaction that might fall under some coverage other than "collapse" (ECF No. 21 at 1), I conclude that Plaintiffs' claim nonetheless fails because, as Plaintiffs acknowledge, the loss still "must be a sudden and accidental direct physical loss" in order for *any* coverage to apply. (ECF No. 19-4 at 28; ECF No. 21 at 4.) Specifically, Plaintiffs argue that the Policy covers "sudden and accidental direct physical loss to property described in Coverage A – Dwelling Protection and Other Coverage B [Structures] Protection except[] as limited or excluded in this policy," and does not exclude "losses due to a chemical reaction" from this coverage. (ECF No. 21 at 4.) But Plaintiffs' argument still stumbles on the hurdle that the loss must be "sudden and accidental" for coverage to apply. Contrary to this requirement, Plaintiffs admit that the chemical reaction is ongoing:

> The 'collapse' aspect of the Plaintiffs' Complaint is an ostentatious manifestation of this chemical reaction. The degree of this manifestation, *whether the reaction is occurring* and is not visible, or if the concrete has crumbled resulting in the entire structure imploding, really has nothing to do with *the physical loss that is already occurring* . . . . The cracking is a manifestation of that chemical reaction and a physical loss that has already occurred (*and continues to occur*) after the pyrrhotite in the concrete is exposed to water and air.

9

(ECF No. 21 at 6-7 (emphasis added); *see also* ECF No. 1 ¶ 7 (alleging "concrete deterioration" and that "this chemical reaction would continue to progressively deteriorate the basement walls.").) Regardless of whether the loss is characterized as a collapse or a chemical reaction, Plaintiffs fail to allege that any loss occurred suddenly, that is, temporally abruptly, as required for coverage to apply.[3]

### B. Implied Covenant of Good Faith and Fair Dealing

Allstate also moves to dismiss Count Two, which alleges breach of the implied covenant of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) (internal citations, quotation marks, and alterations omitted). To maintain a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs must plausibly allege that Allstate acted in bad faith in wrongfully denying coverage for the alleged loss. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794–95 (2013) ("To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.") (alterations omitted). In the context of an insurance policy, "violations of express duties are necessary to maintain a bad faith cause of action." *Id.* at

---

[3] Defendants also argue that Plaintiffs' alleged loss is excluded under other provisions of the Policy, including exclusions of coverage for losses consisting of or caused by "settling, cracking, shrinking, bulging or expansion of . . . walls," (ECF No. 19-1 at 7; ECF No. 19-4 at 20) "defective . . . materials used in repair, construction, renovation, or remodeling," (ECF No. 19-1 at 8; ECF No. 19-4 at 20-21) and "rust or other corrosion." (ECF No. 23 at 5; ECF No. 19-4 at 20.) Because I find that Plaintiffs' alleged loss does not fall under the definition of "collapse" or under any other coverage claimed by Plaintiffs, I need not and do not address these arguments.

797. As a result, the implied covenant of good faith and fair dealing "is not implicated by conduct that does not impair contractual rights." *Id*. at 795.

Plaintiffs allege that they expected to receive benefits under their homeowner's insurance policy, and that Allstate "unreasonably and in bad faith" interpreted the Policy provisions "in a manner for the purpose of denying benefits." (ECF No. 1 ¶¶ 14-15.)

Because I find that Plaintiffs fail to state a plausible claim for breach of contract against Allstate, and therefore that Allstate's conduct did not impair Plaintiff's contractual rights under the Policy, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing also fails.

### C. CUIPA/CUTPA

Finally, Allstate also moves to dismiss Count Three, which alleges a violation of CUIPA and CUTPA. "A plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014). To state a CUIPA/CUTPA claim, Plaintiffs must plausibly allege that Allstate "engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014). The CUIPA provision relevant to this case is the prohibition of "[u]nfair claim settlement practices" under Conn. Gen. Stat. § 38a-816(6). Where an insurer's interpretation of an insurance policy is correct, there can be no violation of CUIPA/CUTPA. *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (affirming dismissal of CUIPA/CUTPA claim after determining that defendant insurer's interpretation of an insurance policy was correct).

Plaintiffs allege that Allstate "provided a false and misleading denial of coverage" to Plaintiffs, "has regularly denied claims" in a similar manner, and had knowledge of numerous

11

claims and lawsuits resulting from similar concrete decay through participation in the ISO, thereby acting in bad faith in violation of CUIPA/CUTPA. (ECF No. 1 ¶¶ 18, 20-23).

Because I find that Allstate's interpretation of the Policy was correct, Plaintiffs' CUIPA/CUTPA claim necessarily fails.

## IV. Conclusion

For the reasons stated above, Allstate's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
August 31, 2017